1  BARRY J. PORTMAN
   Federal Public Defender
2  CYNTHIA C. LIE
   Assistant Federal Public Defender
3  160 West Santa Clara Street, Suite 575
   San Jose, CA  95113
4  Telephone:  (408) 291-7753

5  Counsel for Defendant MENDOZA-SORIANO

6

7
                    IN THE UNITED STATES DISTRICT COURT
8
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10

   UNITED STATES OF AMERICA,          )      No. CR-07-00503 RMW
11                                      )
                      Plaintiff,        )      DEFENDANT'S SENTENCING
12                                      )      MEMORANDUM
   vs.                                  )
13                                      )
   ARQUIMEDES MENDOZA-SORIANO,          )      Date:   Monday, January 28, 2008
14                                      )      Time:   9:00 a.m.
                      Defendant.        )      Court:  Hon. Ronald M. Whyte
15  _____)
                                        _
16

17         The defense does not dispute the accuracy of the guideline range of 70-87 months identified

18  by the United States Probation Office, but respectfully submits that, in accordance with the Ninth

19  Circuit's recent decision in *United States v. Sandoval-Lopez*, 506 F.3d 748 (9th Cir. 2007), the

20  applicable statutory maximum penalty is 24 months under 18 U.S.C. §1326(a).  In the event that

21  this Court were to conclude that the 20-year maximum of §1326(b)(2) applies, a sentence well

22  below the guideline range would nonetheless be warranted in view of Mr. Mendoza's post-offense

23  rehabilitation, facts tending to mitigate his felony priors, his early acceptance of responsibility and

24

25

26

1   the need to avoid disparities in sentencing between similarly situated defendants.[1]

2   **I.      Pursuant to *Sandoval-Lopez*, the Statutory Maximum Penalty Should Be Limited to Two Years**

3

4           Over the past several years, the Ninth Circuit and Supreme Court have endeavored to

    delineate the scope of the Sixth Amendment as it applies to recidivist offenses.  This effort has

5   produced a series of inconsistent decisions.  For example, in *United States v. Gonzalez-Medina*,

6   976 F.2d 570, 572 (9th Cir. 1992), the Ninth Circuit squarely held that "[b]ecause sections 1326(a)

7   and 1326(b)(1) (and, *a fortiori*, 1326(b)(2))) constitute separate crimes – and not merely a single

8   offense with different sentencing criteria – the government was obligated to put on evidence of the

9   defendants' prior felony convictions"; this decision, however, was abrogated by the Supreme Court's

10  5-4 decision in *Almendarez-Torres v. United States*, 553 U.S. 2241 (1998).

11          In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court rejected the distinction

12  – between "sentencing factors" which increased maximum penalties and "elements" of substantive

13  crimes – on which the slim *Almendarez-Torres* majority had relied and held that a factual

14  determination authorizing an increase in the maximum prison sentence must be made by a jury on

15  the basis of proof beyond a reasonable doubt.[2]  The Court stopped short of overturning *Almendarez-*

16  *Torres*, but instead recast that prior decision as "a narrow exception" to its new rule.  *Id.* at 490.

17  However, the logic of *Apprendi* persuaded Justice Thomas that *Almendarez-Torres*, in which he

18  had cast a crucial vote to constitute the majority, had been wrongly decided:

19
        Notwithstanding the broad meaning of the term "crime,"  this Court has qualified the
20      protections of the Fifth and Sixth Amendments by holding that, "other than the fact of a prior
        conviction, any fact that increases the penalty for a crime beyond the prescribed statutory
21      maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.*, at 490,

22      _____

23      [1]The defense regrets that these issues were not presented during the Probation Office's
    presentence investigation;  the attorney previously assigned to represent Mr. Mendoza was in the
24  process of concluding his practice with the Federal Public Defender at the time that the final
    Presentence Report was being disclosed.

25
        [2]The Ninth Circuit, in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002), further
26  specified that such facts must also be alleged in the indictment.

120 S. Ct. 2348, 147 L. Ed. 2d 435 (emphasis added).  But the exception to trial by jury for establishing "the fact of a prior conviction" finds its basis not in the Constitution, but in a precedent of this Court. *See Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).  Moreover, it has long been clear that a majority of this Court now rejects that exception. *See  Shepard v. United States*, 544 U.S. 13, 27-28, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (Thomas, J., concurring in part and concurring in judgment); *see also  Almendarez-Torres, supra*, at 248-249, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (Scalia, J., joined by Stevens, Souter, and Ginsburg, JJ., dissenting);  *Apprendi, supra*, at 520-521, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (Thomas, J., concurring).

*Rangel-Reyes et al. v. United States*, 126 S.Ct. 2873, 2874 (2006) (Thomas, J., dissenting from denial of certiorari).

Notwithstanding the Supreme Court's reluctance to revisit the basic rule of *Almendarez-Torres*, the Ninth Circuit has recently articulated a basis for distinguishing that "narrow exception" to the Sixth Amendment mandate it had announced in *Apprendi*.  In *Salazar-Lopez*, *supra*, 506 F.3d 748, the Court squarely addressed the question of "whether the dates of a previous felony conviction and of a previous removal from the United States must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b). We answer that question in the affirmative." *Id.* 749-750.  In so holding, the Court reasoned that the fact that triggered the statutory maximum of §1326(b) was the *sequence* of prior conviction and the defendant's two removals, not the mere fact of the prior conviction: "As such, the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury. The failure to due so was an *Apprendi* error." *Id.* at 752 (emphasis in original).  The indictment in the instant case alleges three different dates of removal, but the earliest of these would have preceded both of Mr. Mendoza's  felony convictions. The multiplicity of removal dates compounds the failure to allege the temporal relationship between one of the removals and Mr. Mendoza's felony convictions, and accordingly implicates the identical error at issue in *Sandoval-Lopez*, where one of the  multiple removals at issue occurred before the felony conviction that would otherwise trigger §1326's increased maximum penalties.  That the Ninth Circuit deemed the error to be harmless in *Sandoval-Lopez* does nothing to vitiate the fact of the error.

## II.    Mr. Mendoza's Early Acceptance of Responsibility and the Need to Avoid Disparities in Sentencing Warrants a Reduction of Four Levels

Should this Court conclude that *Sandoval-Lopez* offers Mr. Mendoza no relief from the maximum penalties of §1326(b), a sentence substantially below the guideline range is nonetheless warranted under 18 U.S.C. §3553(a).  Mr. Mendoza promptly accepted responsibility for his offense, notwithstanding the potentially high guideline range, without litigating a single issue relating to his prior removals or even seeking basic discovery such as the audio recording of his removal hearing.  Under U.S.S.G. §5K3.1 and the prevailing practice in this district, his early guilty plea would typically warrant a four-level reduction, to a range of 46-57 months given a Criminal History Category of V.  Although §5K31.1 on its face applies only upon the government's motion, the Supreme Court's recent decisions in *Gall* and *Kimbrough* emphasize that the district courts have considerable discretion to craft sentences that remedy inequities inherent in the strict application of the Sentencing Guidelines.  A four-level reduction in the otherwise applicable offense level is therefore well within this Court's sentencing authority, in view of Mr. Mendoza's prompt guilty plea at his first appearance in the district court.

Mr. Mendoza's prior convictions do not warrant a more significant sentence than defendants in this district who have received the benefit of either the adjustment under U.S.S.G. §5K3.1 or the fast-track Memorandum of Understanding in effect prior to July 2006.  *See*, *e.g.*, *United States v. Victor Ramirez-Rocha*, CR 03-20184 JF (30-month fast-track disposition where deportation followed conviction for assault with intent to commit forcible rape); *United States v. Jose Estrada-Barron*, CR 04-20014 JF (30-month fast-track disposition where deportation followed conviction for spousal abuse); *United States v. Miguel Santiago Cervantes*, CR 07-00430 RMW (four-level fast-track reduction where deportation followed two separate adult convictions and one juvenile true finding for statutory rape, and a conviction for conspiracy to smuggle methamphetamine into a state prison facility where he was incarcerated); *United States v. Juan Manuel Torres*, CR 04-20170 RMW (30-month fast-track disposition where deportation followed two strong-arm robbery

convictions).  Mr. Mendoza's prior criminal record, consisting of two felony convictions (discussed in greater detail below) and a misdemeanor false identification conviction, is not particularly aggravated relative to these examples.

### III.    Facts Tending to Mitigate Mr. Mendoza' Prior Convictions Warrant a Further Reduction of at Least Four Levels

Mr. Mendoza has two felony convictions which appear to independently trigger the 16-level enhancement under U.S.S.G. §2L1.2(b)(1)(A). However both are subject to challenge on both factual and legal grounds, that would justify lessening their impact on his ultimate sentence.

It should be noted as a preliminary matter that the rape conviction, because it did not involve allegations of force, constitutes a "crime of violence" within the meaning of §2L1.2(b)(1)(A) solely by virtue of the victim's age.  *See*, *e.g.*, *United States v. Beltran-Munguia*, 489 F.3d 1042, 1047-1048 (9th Cir. 2007).[3]  The victim was over 16 years old at the time of the offense; had she been a mere 18 months older, the conviction would warrant only an eight-level enhancement under §2L1.2(b)(1)(C).  Moreover, Mr. Mendoza's guilty plea in that case was constitutionally infirm on more than one basis: (1) he was erroneously led to believe that the offense was not a "serious felony" or "strike" offense under California's strict recidivist sentencing law; (2) his attorney failed to mount any serious challenge to the government's limited evidence.

The defense in preparing for this Court's sentencing hearing made contact with Mr. Mendoza's attorney for the rape conviction, for the purpose of obtaining information as to exculpatory or mitigating evidence in counsel's possession.  Upon learning of the defense's interest in the available discovery, prior counsel replied, "Uh-oh, did I [expletive] up?"  He subsequently reported that he was unable to find his file or to recall anything about the case.  Accordingly, there is as yet no information to directly corroborate or contradict Mr. Mendoza's recollection that his plea was represented to be to a non-strike offense.  However, the court records circumstantially support

---

[3]Although California Penal Code Section 261(a)(3) does not categorically describe a crime of violence, the charging document does allege the victim's date of birth.

1    the inference that he was affirmatively misadvised by counsel, in that all involved appear to have

2    been ignorant of the actual consequences of his plea.  For example, California state prosecutors

3    typically include in charging documents a specific allegation, where applicable, that the charged

4    offense is a "serious felony" or "strike" offense, conviction for which would later trigger

5    California's strict recidivist sentencing scheme.  In Mr. Mendoza's first felony prosecution, for

6    example, the complaint and information include the allegation that the charged offense "is a serious

7    felony within the meaning of Penal Code Section 1192.7(C)(8)."  Exh. D.[4]  The charging document

8    in the rape prosecution, by contrast, includes no such notice.  In addition, the minutes of a

9    defendant's guilty plea to a strike offense typically record an advisal to that effect by the court.  *See*,

10   *e.g.*, Exh. D ("Defendant advised this is 1 strike.").  In the rape prosecution, by contrast, the court

11   records for that case are devoid of any indication that the parties recognized the offense to be a

12   "serious felony" or "strike" offense.  Exh. E.  The California Supreme Court has held that the

13   "collateral" nature of a particular consequence of a guilty plea does not foreclose an ineffective

14   assistance claim under either the Sixth Amendment or the California Constitution, where counsel

15   has "affirmatively misadvised" the client regarding such consequences.  *See*, *e.g.*, *In re Resendiz*,

16   25 Cal. 4th 230 (2001) (counsel's erroneous advice regarding immigration consequences would be

17   basis for writ of habeas corpus if defendant could meet burden of demonstrating prejudice.)

18          In view of the relative paucity of evidence inculpating Mr. Mendoza, the burden of

19   establishing prejudice from counsel's error would not be an onerous one.  The victim, a friend of Mr.

20   Mendoza, was unable to identify the perpetrator, given her drunken condition at the time of the

21   offense.  The sole eyewitness, Elizabeth Nava, also a social acquaintance of Mr. Mendoza, never

22   observed him in inappropriate contact with the victim, despite the fact that Ms. Nava was

23   sufficiently concerned about the victim's level of intoxication that Ms. Nava repeatedly checked on

24   her during the night.  In so doing, Ms. Nava did ultimately interrupt a sexual assault on the victim,

25   _____

26   [4]Due to unforeseen difficulties, Exhibits D, E and F will be filed under a separate cover.  The undersigned apologizes for the inconvenience.

Defendant's Sentencing Memorandum
CR 07-00503 RMW                              6

1  but the perpetrator Ms. Nava identified was a man other than Mr. Mendoza.[5]  The only evidence

2  tending to inculpate Mr. Mendoza was an DNA comparison with a genetic sample obtained in a

3  routine California Department of Corrections inmate collection long after the offense was first

4  reported.  The infirmities of DNA matching are well documented, particularly where, as here, the

5  evidence sample would consist of a mixture of two or more genetic profiles, from the perpetrator

6  and victim, at a minimum.  *See*, *e.g.*, *People v. Pizarro,* 110 Cal.App.4[th] 530, 619 (2003)

7  (characterizing the complex process of identifying individual genotypes, or genetic pairs of alleles,

8  from a mixture of more than two alleles, as an "unavoidably subjective" practice).  Despite this

9  promising ground for litigation, there is no evidence in the record to indicate that defense counsel

10  considered these challenges or even sought discovery regarding the analysis data, calibration data,

11  protocols or controls.

12          As to the conviction for assault against his mother in 2000, the factual allegations recited in

13  the Presentence Report, however, would not support a conviction for assault with a firearm, in that

14  the evidence indicates that Mr. Mendoza fired in the air and at the ground, rather than in the

15  direction of his mother or any other person.  PSR ¶27.  Under California law, an assault with a

16  deadly weapon requires no intent to achieve a particular result (e.g., murder, rape) other than the

17  application of physical force via the weapon against the person of another.  *See*, *e.g.*, Cal. Penal

18  Code 240; *People v. Rocha*, 3 Cal.3d 893, 899 (1971) ("An assault is an unlawful attempt, coupled

19  with the present ability, to commit a violent injury on the person of another, or in other words, it is

20  an attempt to commit a battery.")  The facts reported evidence no such intent in Mr. Mendoza's use

21  of the firearm; rather, the prosecution theory appears to have been that Mr. Mendoza intended to

22  discharge the firearm and that he did so in a negligent or reckless manner in his effort to intimidate

23

24  _____

25          [5]The foregoing facts are taken from the Lodi Police Department's report of its arrest of Mr. Mendoza in 2003, which the Probation Office permitted the undersigned to review under its supervision.  The defense has subpoenaed additional documents relating to this incident and may be filing supplemental exhibits as needed.

26

his mother.  As reprehensible as this conduct was, and as terrified as she was at the time, Mr.

Mendoza's mother remains fully aware that her son was not attempting to shoot her.  Exh. C.  The

only other offense for which Mr. Mendoza was convicted in this case was the misdemeanor offense

of negligent discharge of a firearm.

Assuming that Mr. Mendoza elects to proceed with sentencing rather than pursue twin

habeas petitions in state court, the foregoing are nonetheless factors this Court may consider in

determining whether a sentence within the guideline range calculated by reference to this conviction

is "reasonable and no greater than necessary" to achieve the ends of the Sentencing Reform Act.

### IV.    Mr. Mendoza's Prior Record Should Be Balanced Against His Post-Offense Rehabilitation

The defects of the prior state prosecutions aside, the offense underlying Mr. Mendoza's rape

conviction is nine years old.  Mr. Mendoza's firearm offense is eight years old.  He is now 29 years

old, drug-free and productively employed both before his latest arrest and after, while in custody.

Even assuming the legal validity of the convictions, there is little to indicate that his actions in 2000

were reflective of a general propensity for violence rather than an acute episodes of drug-induced

criminality.[6]  Mrs. Mendoza recalls that in the weeks leading up to the 2000 offense, her son had

become visibly wasted from drug use, shrinking from a waist size of 38 to 34.  On the day of the

offense, he had been angered by his ex-girlfriend's persistent refusal to let him visit his son, and his

drug use combined with his mother's generous overtures to the ex-girlfriend fueled that anger and

turned it against his mother. Mrs. Mendoza vividly recalls the signs of methamphetamine

intoxication in her son that day – the odor of drugs, his bloodshot eyes and grossly dilated pupils,

spittle foaming at his mouth.  Exh. C.  The inference that methamphetamine intoxication played a

---

[6]Although Mr. Mendoza has a 2006 arrest for Assault with a Deadly Weapon, in which he was reportedly in an altercation with two other men, at least one of whom was armed with a shovel, the Probation Office notes that the matter was resolved as a parole violation only.  PSR ¶31.  The absence of new charges, notwithstanding Mr. Mendoza's two "strike" priors in the same jurisdiction, suggest that the available evidence strongly supported an inference of self-defense by Mr. Mendoza.

1   principal role in the offense conduct finds further support in the record of the early court

2   proceedings. At Mr. Mendoza's initial appearance, the day after his arrest, the public defender

3   appointed to represent him declared a doubt as to his competency under California Penal Code

4   Section 1368; two weeks later, the court found him to be competent, or at least restored to

5   competency.  Exh. F.  This sequence of events and its brevity strongly suggests that Mr. Mendoza

6   had been on a massive drug binge so debilitating that his mental faculties were remarkably impaired

7   even a full day after his arrest, and (2) that he reverted to a more normal state after a period

8   sufficient to allow the drugs in his system to dissipate.

9          Since then, his mother has observed other signs of improvement: he has worked regularly

10  over the past several years in the vineyards of her employer, and she describes a mutually supportive

11  and stable relationship with her son.  Exh. C.  More importantly, his conduct while in custody

12  reflects an increased maturity and respect for both authority and the welfare of others.   Mr.

13  Mendoza was instrumental in preventing the suicide of another inmate, in what the correctional

14  officer who witnessed the rescue describes as an unusual demonstration of concern for others rarely

15  seen in the typically nihilistic social microcosm of the jail.  Exhs. A and B.  He was in a position to

16  intervene because, since his arrest in late July 2007, he has distinguished himself as a trusted inmate

17  worker for the Santa Clara County Department of Correction, and as such was at the cell of the

18  other inmate at the time of the suicide attempt.  Exh. A.  He was motivated to intervene because he

19  has relinquished the indifference to the hardships and suffering of others that the street gang and

20  prison subcultures commonly promote.

21

22

23

24

25

26

1

**CONCLUSION**

2      For the foregoing reasons, the defense respectfully requests a sentence of 30 months

3   imprisonment.

4

5   Dated: January 21, 2008

6                                              Respectfully submitted,

7                                              BARRY J. PORTMAN
                                               Federal Public Defender
8

9
                                               CYNTHIA C. LIE
10                                             Assistant Federal Public Defender

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26